IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

01 MAY 31 PM 3:45

MICHAEL W. FRANKS,          )
                            )
     Plaintiff,             )
                            )   Civil Action No.
v.                          )
                            )   CV-00-AR-2168-S   **ENTERED**
                            )
                            )   MAY 31 2001
BIRMINGHAM BUDWEISER        )
DISTRIBUTING CO., INC.,     )
                            )
     Defendant.             )

### MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment and plaintiff's "motion objecting to testimony", deemed a motion to strike. Plaintiff, Michael W. Franks ("Franks"), brings suit against defendant, Birmingham Budweiser Distributing Co., Inc. ("BBD"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34. Franks alleges that BBD violated the ADEA by its promotion of younger employees and by its demotion of him. He alleges further that his demotion resulted in his constructive discharge. For the reasons set forth in the opinion below, BBD's motion is due to be granted.

### Pertinent Material Facts

Franks began working for BBD in 1986 at an entry level

position. He subsequently received a promotion to the sales department as a "peddle delivery" salesman. In this position, he sold beer wholesale to stores which then retailed the product to their own customers. In 1993, BBD transferred plaintiff to a second salesman position, that of "pre-salesman". Although BBD now says that this was a purely lateral transfer, Franks' employment records show that at the time of this employment action, BBD characterized the move as a promotion. As a pre-salesman, Franks essentially sold "door-to-door", as he had as a peddle deliveryman, by visiting stores, or "accounts", at their places of business for the purpose of making sales. However, there were differences in how the sales were carried out. As a peddle deliveryman, Franks drove a beer truck on his sales route. When he made a sale, the beer was taken off the truck and transferred to the store. As a pre-salesman, he drove a car, for which he received an allowance of $275 per month. When he made a sale, the order was transmitted to delivery personnel, who were then responsible for subsequently delivering the beer. The pre-sales method is typically used by BBD for its higher-volume accounts.

Franks bases his claim of age discrimination on three actions by BBD. The first alleged instance occurred when Tommy Oliver ("Oliver"), who had been promoted to a sales position in 1990, was

promoted to account manager, the level above salesman, on January 1, 1996. The other two allegedly unlawful incidents both occurred on January 5, 1998. At that time, Brian Lancaster ("Lancaster"), who had been promoted to pre-sales on January 3, 1996, thus making Franks and him the only pre-salesman for the region of BBD's business designated as the Jasper Area ("Jasper"), was promoted to account manager. Simultaneously, Franks was transferred back to peddle delivery. When Chris Willis ("Willis"), one of Franks's supervisors, informed of him of this transfer, Willis told him the action was being taken because Franks had done sub-standard work during 1997 and that Franks should be prepared for a $3000-$5000 annual decrease in pay. As a peddle deliveryman, Franks would be paid on commission and would no longer receive the salary for pre-sales of $450 per week. Claiming that he could not do the peddle delivery job because of an existing back condition, Franks quit on January 5, 1998. At the same time, Rob Fondren ("Fondren") and Charlie Nail ("Nail") were transferred to pre-sales for Jasper. Fondren was transferred from peddle delivery. Nail was moved down from a higher position. The record is not clear on why Nail was demoted, but he was cited for a violation of company policy in December, 1997.

The record is also unclear on the exact decision making

3

process regarding the January 5, 1998 actions, but it does appear that they were initiated by Willis and Keith Nelson, Willis's immediate supervisor. Pat Lynch, Nelson's immediate higher-up, who had made 3 or 4 trips from his office to Jasper during 1997 to help determine why BBD's market share in that area was declining, was also involved in the decisions and approved of them. Their stated reason for promoting Lancaster and transferring Franks essentially is that they observed that conditions in Franks's stores with respect to beer prices, advertisement displays, shelf conditions, and shelf space were chronically deficient. In contrast, BBD states, to the extent that these same problems were observed in Lancaster's stores, they were corrected. However, BBD has no written records of the deficient conditions in Franks's stores and Franks disputes that his displays and pricing were unsatisfactory. Franks received a written review from his immediate supervisor, Wayne Smith ("Smith"), in October 1997 that was generally favorable but did note that Franks's pricing needed improvement.

    Franks's precise age is not given, but in his affidavit he declares himself to be above the age of 40. His deposition reveals that he approximates that in April of 1993 he was 42 years old. Lynch, the only other person whose deposition is part of the record, states, to the best of his recollection, that Lancaster,

4

Oliver, and Fondren are under 40 and that Nail is over 40. Although Franks also declares that Lancaster, Oliver, and Fondren are under 40, in deposition, he states that he does not know when they were born or their approximate ages.

Franks filed an EEOC charge on June 1, 1998, complaining of discrimination based on disability and age. On May 5, 2000, he received a right-to-sue letter from the EEOC regarding his disability claims. The letter was silent on his right to proceed on his claims under the ADEA. Franks brought suit in this court based on the ADA and ADEA on August 3, 2000, but his ADA claim was dismissed with prejudice on April 18, 2001 at his request.

On December 21, 1999, Franks and his wife filed for bankruptcy under Chapter 13. Among their personal property, they valued a "[p]ossible age discrimination and/or ADA case against a former employer currently under investigation by EEOC" at $1, and claimed it as exempt property under Ala. Code § 6-10-6. Their proposed repayment plan called for paying the difference between their combined monthly income and their monthly expenditures, $540.27, to the plan on a monthly basis. The 60-month payment plan was subsequently approved by the bankruptcy court. On April 16, 2001, after BBD had pointed out the value Franks had placed on his case, Franks and his wife amended their list of personal property to

5

value his dispute with BBD at over $100,000.

## Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a <u>genuine</u> issue of <u>material</u> fact, not merely some factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a reasonable jury could return a verdict for plaintiff. If so, defendants' motion for summary judgment must be denied. If,

6

however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

## Discussion

### I. Effect of Franks' Bankruptcy

BBD contends that Franks's status as a Chapter 13 debtor denies him standing to bring this suit and that his valuation of his claim against BBD in his bankruptcy petition implicates the doctrine of judicial estoppel. Regarding a Chapter 13 debtor's standing to sue, the Eleventh Circuit has recently held that "while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000) (internal quotation marks and citation omitted). Franks' confirmed Chapter 13 plan establishes that the contingent proceeds of his claims against BBD are not necessary to the fulfillment of his bankruptcy plan. Therefore, he retained control over the asset represented by this suit and has standing to bring it into this court.

BBD's second argument is likewise inefficacious. Particularly

7

unavailing is BBD's reliance on *Chandler v. Samford Univ.*, 35 F.Supp.2d 861 (N.D.Ala. 1999) (Acker, J.). In that case, this court expressly limited its discussion of the applicability of judicial estoppel by focusing "only on the consequences of [the plaintiff's] failure to include the claim as an asset" in the bankruptcy proceeding that pre-dated plaintiff's suit, which was based on that unlisted claim. 35 F.Supp.2d at 863 n.1. Here, Franks listed his pending EEOC charge when he filed for Chapter 13 protection. The discrepancy between his two valuations does not indicate that he is "playing fast and loose with the courts." Given the status of Franks's dispute with BBD on each of the dates of the two valuations, neither estimation is so outlandish as to trigger application of the doctrine of judicial estoppel.

II. Exhaustion of Administrative Remedies

BBD points out that Oliver's promotion of January 1, 1996 occurred much more than 180 days prior to Franks's June 1, 1998 EEOC filing.[1] To bring an ADEA action, a plaintiff must file a

---

[1] BBD makes the same point in regards to Lancaster's promotion to pre-sales in January, 1996, thereby joining Franks as the only Jasper pre-salesmen. However, the court does not take plaintiff to be arguing that he should recover for Lancaster's 1996 promotion, a promotion that made him merely Franks's co-equal. Therefore, the court finds it unnecessary to discuss the time bar as applied to that employment action.

8

charge with the EEOC within 180 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d). Failure to do so bars recovery on the basis of the untimely charge. *See McClinton v. Alabama By-Products Corp.*, 743 F.2d. 1483, 1484-1485 (11th Cir. 1984). However, this timeliness requirement for ADEA claims, as in the Title VII context, may be subject to equitable tolling. *See Carter v. West Publishing Co.*, 225 F.3d 1258, 1265-1266 (11th Cir. 2000); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1435-1436 (11th Cir. 1998). Additionally, if a discriminatory practice constitutes a "continuing violation", such that the unlawful practice, though initiated prior to the 180-day period preceding the EEOC filing, manifests itself within the 180 day window, the time bar will not preclude recovery on the basis of that continuing violation. *See Carter*, 25 F.3d at 1263-1265; *Turlington*, 135 F.3d at 1434-1435.

The continuing violation theory justifies Franks's argument that whether Oliver's promotion violated the ADEA should be decided on its merits if, as Franks alleges in his complaint, Oliver's promotion and the January, 1998 decisions are not isolated events, but are part of BBD's "pattern and practice". However, Franks fails to provide any evidence of even a shadow of a policy, formal

or informal, that ties Oliver's promotion to acts that occurred two years later. In fact, in his brief responding to BBD's summary judgment motion, Franks barely mentions Oliver's promotion and does not explain at all why it is related to the later alleged acts. Moreover, assuming *arguendo* that Oliver's promotion constitutes a violation, the discriminatory effect of that action, as a discrete act, standing alone, would be merely "the present consequence of a one time violation, which does not extend the limitations period." *Carter*, 225 F.3d at 1263 (internal quotation marks and citations omitted).

Neither is equitable tolling available here. In order for that doctrine to be applied, Franks has to prove that its application is appropriate. Because he has made no such argument, he has not carried his burden of justifying its application. Therefore, Franks did not file his charge that Oliver's promotion was an act of age discrimination with the EEOC within the time frame called for under the law and recovery on that basis is barred.

The court notes that neither party has spoken to the fact that the Franks right-to-sue letter addressed only his disability charges, and not his age charges. Whether due to a simple clerical

10

error on the EEOC's part or not, the court will follow the parties' lead and consider this technical flaw a non-issue.

III. *Prima Facie* Case

BBD argues that Franks has failed to establish two elements of his circumstantial evidence *prima facie* case: 1) that he suffered an adverse employment action and 2) that he lost promotions to or was replaced by a person substantially younger than himself. "Although a plaintiff's burden in proving a *prima facie* case is light, ... summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case." *Turlington*, 135 F.3d at 1433-1434 (citations omitted).

A. Adverse Employment Action

Conceding that the promotion of Lancaster to account manager adversely affected Franks, BBD limits its arguments on this *prima facie* element to Franks's transfer back to peddle delivery. In the employment discrimination context, employment actions most accurately characterized as "transfers" may be "adverse." *See Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998). The Eleventh Circuit has found that a transfer that stripped the

11

employee of a guaranteed income equal to that of his former position is adverse. *See Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1412 (11th Cir. 1998).

In contending that Franks's transfer to peddle delivery was not adverse, BBD stresses the possibility that he **could** have earned as much as peddle deliveryman as he would have been assured as a pre-salesman. That possibility is no guarantee. Even leaving aside BBD's characterization of Franks's 1993 transfer from peddle delivery to pre-sales as a "promotion" and Willis's statement to Franks that a precipitous drop in income would accompany Frank's 1998 transfer back to peddle delivery, the fact that Franks, as a peddle deliveryman, was no longer guaranteed the income which he would have received in pre-sales alone is enough to satisfy this *prima facie* element.

B.  <u>Substantially Younger</u>

In establishing that an over 40 year-old plaintiff has been discriminated against on the basis of his age, the fact that he was replaced by or passed over for promotion in favor of someone under 40 years old lacks conclusive probative value. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). Instead, a protected-class plaintiff must provide evidence that the

discrepancy between his age and that of his replacement or of the promoted individual is substantial, so as to support a reasonable inference of discrimination based on age. *See id; Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1549 (11th Cir. 1994). Replacements and promoted individuals as little as 3 years and 5 years younger than ADEA plaintiffs have been found "substantially younger" than those plaintiffs. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359-1360 (11th Cir. 1999) (5 year difference); *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir. 1989) (3 year difference).

The sparsity in the record of the most basic of evidence makes this element problematic for Franks. First, the court must assume, based on Franks's guess that he was 42 in April, 1993, that he was 47 years old in January, 1998. Franks Depo. at 32. Second, there is no evidence whatsoever of Lancaster's and Fondren's specific ages. In light of Franks's deposition testimony that he is not even aware of their approximate ages, Franks Depo. at 37-38, his declaration in his affidavit that they are under 40 is questionable to say the least. The testimony of Lynch, who was at least 3 steps up the chain of command from them, is also shaky. Like Franks, he believes that Lancaster and Fondren are under 40. However, Lynch's

13

testimony does tend to show that one of the decision makers here, though perhaps not the primary one, perceived Lancaster and Fondren to be what could pass as "substantially younger" than Franks under the Eleventh Circuit's standard. This leaves open, if only slightly, the possibility that the decisions were unlawfully age-based.

Another gap in the factual record forecloses this possibility, however, with respect to BBD's decision to transfer Franks. Franks intimates, without evidentiary support, that he was replaced by Fondren. However, what the record shows is that on January 5, 1998 Fondren **and** Nail, believed by Lynch to be over 40, were moved into the two Jasper pre-sales spots vacated by Lancaster and Franks. When asked in deposition whether Fondren took Franks's pre-sales position, Lynch replied that he did not know because he did not know which accounts Fondren had assumed. Other than that exchange, there is no evidence on who replaced whom. Thus, Franks has done nothing to establish, as is his burden, that it was Fondren, not Nail, who took on Franks's pre-sales responsibilities.[2] Because he

---

[2] Even if Franks had shown that Fondren replaced him, it would not change the fact that BBD filled two slots formerly occupied by one under 40 individual (Lancaster) and one over 40 individual (Franks) with one under 40 individual (Fondren) and one over 40 individual (Nail). While Franks might suggest that Nail's demotion itself an act of age discrimination, what little evidence there is on his demotion indicates that he was written up for a company policy violation in December of 1997. In short, without more

has not established that he was replaced by someone assumedly substantially younger than himself, Franks cannot make out a *prima facie* case regarding BBD's decision to transfer him to peddle delivery.³ This leaves BBD's promotion of Lancaster over him for account manager as Franks's only basis for relief under the ADEA to survive the *prima facie* stage.

IV.   Legitimate, Non-discriminatory Reason and Pretext

If a plaintiff makes out a *prima facie* case, his employer must provide a legitimate non-discriminatory reason for the adverse action. *See Coombs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Upon this showing, a plaintiff must "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.*, 106 F.3d at 1528 (citations omitted). However,

---

evidence, this hardly seems the act of an employer intending to discriminate based on age.

³Without the existence of a genuine issue of material fact as to whether BBD was impermissibly motivated by Franks's age in transferring him, Franks cannot make out a constructive discharge claim under the ADEA. 29 U.S.C. § 623; *see Hellums v. Webster Industries, Inc.*, 97 F.Supp.2d 1287, 1296 (M.D.Ala. 2000).

even if a plaintiff satisfies this standard, summary judgment for the employer may be appropriate in light of several factors, including "'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 520 U.S. 133, 148-49 (2000)).

In essence, BBD's stated reason for promoting Lancaster and not Franks is that deficiencies in Lancaster's store conditions (i.e., displays, pricing, shelf space, and shelf conditions) were corrected while deficiencies in Franks's store conditions went uncorrected. Franks attempts to undercut this explanation in three ways. First, he disputes the very existence of these problems by declaring that his prices were never wrong, that his displays were never changed, and that, in general, he never had any complaints from his accounts. Franks Aff. at 3. Even assuming that such absolute statements are true, they do not address the other two components of store conditions that BBD states were repeatedly sub-standard, shelf space and shelf conditions. Accepted as true, Franks's declaration does little but support the inference that

16

Willis, Nelson, and Lynch may have made an employment decision based on erroneous or incomplete information. Franks's second ground for pretext is similarly unpersuasive. He points out that BBD did not adhere to some of its general managerial practices with regards to Franks during 1997. In particular, written records of the date and location of the deficient store conditions noted by Lynch, Willis, and Nelson were not kept. However, BBD's lax record-keeping and flawed channels of communication are not evidence that the decision makers did not rely on their honestly held belief that Franks was failing to correct the observed deficiencies. Finally, to the extent that Smith's October, 1997 evaluation of Franks clashes with the perception of Willis, Nelson and Lynch, the distinctions are simply not probative of whether the latter three relied on their perception in deciding to promote Lancaster instead of Franks. There is no evidence that Smith was involved in the decision and there is no evidence that the three decision makers were involved in the October, 1997 evaluation.

In sum, Franks's evidence does little to undercut the statements by the three decision makers that their conclusion, whether mistakenly arrived at or not, was based on reasons unrelated to Franks's age. Furthermore, even if this court were to find that Franks has come forward with sufficient evidence of

17

pretext, such evidence, considering the weaknesses of his *prima facie* case, would still not be enough to avoid the granting of BBD's summary judgment motion. *See Reeves*, 520 U.S. at 148-49.

### Conclusion

A separate and appropriate order will be entered.

DONE this 31st day of May, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE